No. 2--07--1195     Filed: 11-24-09

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Winnebago County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 90--CF--357 |
| ONDREA EDGESTON, | ) ) | Honorable John R. Truitt, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE SCHOSTOK delivered the opinion of the court:

Defendant, Ondrea Edgeston, appeals from an order denying him leave to file a second petition for relief under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122--1 et seq. (West 2006)). Defendant contends that he is entitled to file the petition because (1) he is actually innocent of felony murder (Ill. Rev. Stat. 1989, ch. 38, par. 9--1(a)(3)); and (2) he can satisfy the cause-and-prejudice test of section 122--1(f) of the Act (725 ILCS 5/122--1(f) (West 2006)). We reverse, grant defendant permission to file the proposed petition, and remand the cause.

On March 10, 1990, Ricky Sullivan fatally shot Claire Constantine as he and defendant were burglarizing her home. A few hours later, defendant fatally shot Forest King at a different location. Defendant was tried separately for the first alleged murder (the Constantine case or this case) and the second alleged murder (the King case). In the Constantine case, defendant was convicted of felony murder based on burglary (Ill. Rev. Stat. 1989, ch. 38, par. 19--1(a)) and was sentenced to 60 years

in prison. In the King case, defendant was convicted and sentenced to death, with his eligibility for the death penalty based solely on one factor: that he was guilty of murdering two individuals, the other being Constantine (see Ill. Rev. Stat. 1989, ch. 38, par. 9--1(b)(3)). The present appeal arises from defendant's conviction in the Constantine case, but the two cases are interrelated.

On his direct appeal in the Constantine case, defendant argued that he was innocent of felony murder. He reasoned that he had actually committed residential burglary, not burglary, and that residential burglary was not a "forcible felony" (Ill. Rev. Stat. 1989, ch. 38, par. 9--1(a)(3)) that could support a conviction of felony murder. In 1993, this court affirmed defendant's conviction. We held that, although the statutory list of forcible felonies included burglary but not residential burglary (Ill. Rev. Stat. 1989, ch. 38, par. 2--8), burglary was a lesser included offense of residential burglary; thus, the State properly charged defendant with burglary, and his conviction of felony murder could stand. People v. Edgeston, 243 Ill. App. 3d 1, 10-11 (1993).

On defendant's direct appeal in the King case, the supreme court upheld defendant's conviction and death sentence. People v. Edgeston, 157 Ill. 2d 201 (1993).

In 1994, the supreme court issued People v. Childress, 158 Ill. 2d 275 (1994). There, the defendant had been convicted of first degree murder, burglary, and two other felonies. The supreme court vacated the conviction of burglary, explaining that residential burglary and burglary are mutually exclusive offenses and that, because the victim was murdered in her home while it was being burglarized, the defendant could have been convicted of residential burglary but not burglary. Childress, 158 Ill. 2d at 302. The court upheld the defendant's death sentence on grounds not relevant here. However, it held that, because burglary was not a lesser included offense of residential burglary, and only burglary could support a conviction of felony murder, his death sentence could not

be based on the aggravating circumstance of having committed felony murder (see Ill. Rev. Stat. 1989, ch. 38, par. 9--1(b)(6)).[1] Childress, 158 Ill. 2d at 302-03.

In 1994, after the supreme court decided Childress, defendant filed pro se postconviction petitions in both the Constantine and King cases. In the Constantine case, his petition asserted that Childress required vacating his murder conviction. In November 1996, after the trial court appointed counsel for defendant (apparently the same attorney in both cases), defendant and the State signed an "Agreement and Waiver" (Agreement), which the court entered on November 26, 1996. Under the Agreement, defendant would receive postconviction relief in the King case and, on resentencing there, the State would not seek the death penalty. In turn, defendant promised to withdraw his postconviction petition in the Constantine case and to waive any right of appeal as to the petition.

On February 20, 2007, defendant requested permission under section 122--1(f) of the Act to file a second postconviction petition in the Constantine case. The request was accompanied by a proposed postconviction petition claiming that, under Childress, he was actually innocent of felony murder. Defendant also filed an affidavit stating as follows. Shortly after November 26, 1996, he learned of a newspaper article reporting that the State signed the Agreement out of fear that defendant's murder conviction in the Constantine case would be reversed, thus invalidating his death penalty in the King case. Defendant told his postconviction attorney about the article. The attorney responded that, if defendant withdrew from the Agreement, he would be "back on death row." The attorney did not tell defendant that, if his felony murder conviction in the Constantine case were

---

[1]The residential burglary statute has been amended so that burglary is now a lesser included offense of residential burglary. See 720 ILCS 5/19--3(a) (West 2008); People v. Atkins, 217 Ill. 2d 66, 70 (2005).

reversed, he could not be retried for the murder of Constantine and could not receive the death penalty in the King case, as the sole qualifying factor would no longer exist.

The trial court denied defendant permission to file his second postconviction petition. Defendant appealed. On appeal, he argues that section 122--1(f) does not bar his second postconviction petition. Defendant provides two reasons: (1) he has a valid claim of actual innocence, in that Childress overruled Edgeston and must be applied retroactively to defendant's conviction of felony murder; and (2) he has met section 122--1(f)'s cause-and-prejudice test by showing that his postconviction attorney performed deficiently and that he would be prejudiced by being barred from raising his claim of actual innocence. For the reasons that follow, we agree with defendant that he should be allowed to file his second postconviction petition.[2]

---

[2]The parties agree that the proposed petition is indeed defendant's second one in this case and that, as a result, section 122--1(f) applies. We note that, although defendant did file a postconviction petition in 1994, he withdrew it before the trial court ruled on it. Arguably, defendant now seeks not to file a second postconviction petition but merely to refile his initial one, which asserted the same claim of actual innocence. If that is so, he need not satisfy section 122--1(f). However, People v. English, 381 Ill. App. 3d 906 (2008), might defeat this argument. In English, the court noted that section 122--5 of the Act (725 ILCS 5/122--5 (West 2006)) allows a defendant to voluntarily withdraw and later refile a postconviction petition. English, 381 Ill. App. 3d at 909. The court held that, because section 122--5 does not specify how long a defendant has to refile a postconviction petition, section 13--217 of the Code of Civil Procedure (735 ILCS 5/13--217 (West 2006)) governs. Under section 13--217, a defendant has one year from a voluntary dismissal to refile his petition. English, 381 Ill. App. 3d at 910. Here, defendant obviously missed that deadline and thus could not

We review de novo the denial of leave to file a second or subsequent postconviction petition. People v. Simmons, 388 Ill. App. 3d 599, 606 (2009).

Section 122--1(f) provides:

"Only one petition may be filed by a petitioner under this Article without leave of the court. Leave of court may be granted only if a petitioner demonstrates cause for his or her failure to bring the claim in his or her initial post-conviction proceedings and prejudice results from that failure. For purposes of this subsection (f): (1) a prisoner shows cause by identifying an objective factor that impeded his or her ability to raise a specific claim during his or her initial post-conviction proceedings; and (2) a prisoner shows prejudice by demonstrating that the claim not raised during his or her initial post-conviction proceedings so infected the trial that the resulting conviction or sentence violated due process." 725 ILCS 5/122--1(f) (West 2006).

A defendant need not satisfy the cause-and-prejudice test if he raises a claim of actual innocence. People v. Ortiz, No. 107363, slip op. at 8 (November 19, 2009); People v. Williams, 392 Ill. App. 3d 359, 366-67 (2009); see People v. Washington, 171 Ill. 2d 475, 489 (1996) (judicially created cause-and-prejudice test now codified in section 122--1(f) does not apply to successive

_____

circumvent section 122--1(f) by arguing that he is merely attempting to refile his voluntarily withdrawn first petition. We note that, because untimeliness is an affirmative defense that the State must raise or forfeit (see People v. Boclair, 202 Ill. 2d 89, 99-100 (2002)), English would not necessarily defeat defendant's attempt to refile his first petition. In any event, defendant does not contend that the proposed petition is not a second or subsequent one to which section 122--1(f) applies. Therefore, we do not consider this possible issue further. See 210 Ill. 2d R. 341(h)(7).

petition that raises valid claim of actual innocence). Here, defendant argues that he has raised such a claim. Defendant is correct.

As both the supreme court and this court have recognized, Childress overruled Edgeston's holding that burglary was a lesser included offense of residential burglary and thus residential burglary could support defendant's conviction of felony murder. Atkins, 217 Ill. 2d at 69; People v. Borgen, 282 Ill. App. 3d 116, 122-23 (1996). If Childress applies here, then defendant is innocent of the felony murder of Constantine--not because he did not commit the acts alleged, but because, as a matter of law, those acts did not amount to felony murder under the statute in effect at the time.

Childress does apply. The supreme court overruled Edgeston and like opinions (see Atkins, 217 Ill. 2d at 69) by excluding residential burglary from the class of offenses that could support a conviction of felony murder. The change was one in the substantive law of criminal liability; therefore, defendant is entitled to its benefit. " 'Illinois follows the federal rule that a decision that narrows a substantive criminal statute must have full retroactive effect in collateral attacks.' " People v. Alberts, 383 Ill. App. 3d 374, 382 (2008), quoting People v. Rodriguez, 355 Ill. App. 3d 290, 294 (2005); see Bousley v. United States, 523 U.S. 614, 620, 140 L. Ed. 2d 828, 838, 118 S. Ct. 1604, 1610 (1998) (federal standard); Rodriguez, 355 Ill. App. 3d at 294-95 (reasoning that, in People v. Flowers, 138 Ill. 2d 218, 237 (1990), supreme court implicitly adopted federal standard governing retroactivity of both new procedural rules and new substantive rules). Thus, Childress applies.[3]

Indeed, in People v. Johnson, 305 Ill. App. 3d 102 (1999), the court applied the rule of full retroactivity to circumstances indistinguishable from those here. Originally, the defendant was

---

[3]Curiously, neither party cites either Alberts or Rodriguez, even though these recent opinions are dispositive.

convicted of felony murder based on residential burglary. He filed a postconviction petition claiming that, under Childress, his murder conviction could not stand. The appellate court agreed. The court did not rely on Bousley's rule of full retroactivity or Flowers's apparent approval of that rule. Instead, the court reasoned that Childress applied retroactively because it did not announce a new rule of law. Johnson, 305 Ill. App. 3d at 105, citing People v. Moore, 177 Ill. 2d 421, 430-32 (1997).

Given that Childress overruled substantial contrary precedent, albeit from the appellate court and not the supreme court, we doubt whether Johnson's reasoning is sound. In Rodriguez, we retroactively applied our opinion in People v. Dexter, 328 Ill. App. 3d 583, 587 (2002). Dexter explicitly rejected earlier case law[4] by narrowing the scope of the term "public way" as used in the pertinent statutes in both Dexter (see 720 ILCS 570/407(b)(1) (West 1998)) and Rodriguez (see 705 ILCS 405/5--4(7)(a) (West 1992)). We implied that Dexter announced a "new substantive rule[]" because it raised the possibility that the defendant in Rodriguez had been convicted of an act that the law did not make criminal or faced a punishment that the law could not impose. Rodriguez, 355 Ill. App. 3d at 295; see Bousley, 523 U.S. at 620, 140 L. Ed. 2d at 838, 118 S. Ct. at 1610. Because Childress also overruled contrary precedent and raised the possibility that the defendant in Johnson had been convicted of an offense that the legislature had not created, we cannot endorse Johnson's statement that Childress did not announce a new rule of law. Nonetheless, under Alberts and Rodriguez, Johnson's result is surely correct.[5]

---

[4]The case law that Dexter rejected (Dexter, 328 Ill. App. 3d at 591) was our opinion in the Rodriguez defendant's direct appeal (People v. Rodriguez, 276 Ill. App. 3d 33 (1995)).

[5]The State concedes that Johnson is indistinguishable, but it contends that the opinion should not be followed. According to the State, Johnson is wrong because it omits any discussion of

The State contends that Atkins prohibits the retroactive application of Childress to defendant's conviction of felony murder. However, that case is distinguishable. In Atkins, the defendant was charged with residential burglary. His alleged offense, trial, and conviction all took place after Childress was decided but before the effective date of the statutory amendment that made burglary a lesser included offense of residential burglary. At the defendant's bench trial, the judge, finding a reasonable doubt that the defendant was guilty of residential burglary, convicted him "only of the 'lesser included offense' of burglary." Atkins, 217 Ill. 2d at 68. The appellate court reversed the defendant's conviction, concluding that the amendment that made burglary a lesser included offense of residential burglary was prospective only. People v. Atkins, 348 Ill. App. 3d 126, 129-30 (2004). The supreme court agreed, explaining that, under section 4 of the Statute on Statutes (5 ILCS 70/4 (West 2002)), procedural changes to statutes may be applied retroactively, but substantive ones may

---

Teague v. Lane, 489 U.S. 288, 103 L. Ed. 2d 334, 109 S. Ct. 1060 (1989), or the supreme court's broad statement in People v. De La Paz, 204 Ill. 2d 426, 433 (2003), that, "[i]n general, new rules do not apply retroactively to cases on collateral review." However, the State overlooks that, as stated in Alberts, 383 Ill. App. 3d at 382, and Rodriguez, 355 Ill. App. 3d at 295, Teague distinguishes sharply between procedural rules and substantive rules and limits the retroactive application of only the former. The Court has plainly stated that, "because Teague by its terms applies only to procedural rules, we think it is inapplicable to the situation in which this Court decides the meaning of a criminal statute enacted by Congress." Bousley, 523 U.S. at 620, 140 L. Ed. 2d at 838, 118 S. Ct. at 1610. Moreover, in De La Paz itself, the court explained that, under Teague, a new rule applies retroactively if it narrows statutory criminal liability and thus addresses "substantive" rather than "procedural" law. De La Paz, 204 Ill. 2d at 434.

not. Atkins, 217 Ill. 2d at 71. The amendment was substantive, as it changed the elements of a crime and thus exposed the defendant "to conviction of an additional crime." Atkins, 217 Ill. 2d at 72.

In Atkins, the court was concerned with the legislature's amendment of a statute, the retroactive application of which would have exposed the defendant to liability for conduct that was not criminal (or not the particular crime charged) when the defendant committed it. Here, as in Alberts, Rodriguez, and Johnson, we have a judicial reinterpretation of a statute, effectuating the intent of the legislature, and the question is whether that judicial reinterpretation should be applied retroactively so as to avoid exposing the defendant to criminal liability that the legislature never intended. Section 4 of the Statute on Statutes obviously has no application at all; this distinction by itself takes the case out of Atkins. Moreover, the retroactive application of a substantive judicial rule that narrows a defendant's exposure to criminal liability obviates the serious risk that the defendant will be convicted of a crime that the legislature never created. See Bousley, 523 U.S. at 620-21, 140 L. Ed. 2d at 838-39, 118 S. Ct. at 1610. By contrast, the retroactive application of a substantive rule that broadens a defendant's exposure to criminal liability creates this very risk. Thus, Atkins actually supports our conclusion that Childress must be applied retroactively.

Because Childress applies to defendant's case, his proposed petition states a valid claim of actual innocence. Therefore, absent any complicating considerations, he is entitled to file the petition whether or not he has met the cause-and-prejudice test of section 122--1(f) of the Act.

There is one potential complicating consideration: the Agreement, under which defendant promised to abandon his original postconviction petition, which raised the same claim as the proposed petition here. Arguably, filing the proposed petition would breach defendant's promise.

Neither party directly addresses the validity or effect of the Agreement. However, we may affirm the judgment on any basis called for by the record. People v. Rajagopal, 381 Ill. App. 3d 326, 329 (2008). Therefore, we consider whether, by entering into the Agreement, defendant waived his right to file the proposed petition. We hold that he did not.

The Agreement is akin to a plea agreement under which a defendant, in return for certain concessions by the State, waives (in whole or in part) his right to appeal. As a general rule, such an appeal waiver is valid as long as it is knowing and voluntary. In People v. Fearing, 110 Ill. App. 3d 643 (1982), a jury found the defendant guilty of burglary and felony theft. The trial court then accepted a plea agreement under which the defendant received specified sentences on the two convictions; he pleaded guilty, in return for a specific sentence, to one of six pending charges, and the State dismissed the other charges. As part of the agreement, the defendant promised not to appeal his convictions of burglary and theft. However, he then did so.

The appellate court dismissed the defendant's appeal. The court explained that, just as a defendant may waive other statutory or constitutional rights, he may waive his right to appeal. Fearing, 110 Ill. App. 3d at 644. Therefore, like plea agreements in general, the appeal waiver ought to be enforced "unless the defendant can show that the agreement not to appeal was made involuntarily or unintelligently or suffers from some similar infirmity." Fearing, 110 Ill. App. 3d at 645; see also People v. Houle, 257 Ill. App. 3d 721, 726-27 (1994) (adopting holding of Fearing but reversing, on procedural grounds, denial of motion to withdraw guilty plea); People v. Nichols, 143 Ill. App. 3d 673, 677 (1986) (relying on Fearing to enforce appeal waiver).

The Agreement differs somewhat from those in the foregoing cases. Defendant entered into it during a postconviction proceeding, not during the original criminal proceeding, and he elected to

forgo his right to seek postconviction relief rather than his right to appeal the original judgment. However, these differences can be of no consequence in relation to whether the Agreement is enforceable. We see no reason to apply the reasoning of Fearing to appeal waivers in plea agreements but not to a waiver of postconviction relief after the original trial proceedings have ended. Also, postconviction-relief waivers in plea agreements will be upheld as long as they are knowing and voluntary. See Watson v. United States, 165 F.3d 486, 488-89 (6th Cir. 1999); People v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994). Therefore, we hold that a postconviction-relief waiver should be enforced if it is knowing and voluntary.

The general proposition that postconviction-relief waivers are valid does not resolve whether the waiver in this concrete case is valid. For two reasons, per these allegations, we conclude that it is not. The first is that defendant entered into the Agreement only because his postconviction counsel did not provide him the reasonable level of assistance that the Act requires (see People v. Suarez, 224 Ill. 2d 37, 42 (2007)). In the context of plea agreements, an appeal waiver can be set aside if it resulted from the ineffective assistance of trial counsel. DeRoo v. United States, 223 F.3d 919, 923-24 (8th Cir. 2000); MacDonald v. State, 778 A.2d 1064, 1074 (Del. 2001). Such ineffectiveness can make the plea agreement involuntary. MacDonald, 778 A.2d at 1074. Similarly, we believe, the deficient assistance of postconviction counsel can make a defendant's waiver of postconviction relief less than knowing or voluntary. That is what allegedly happened here.

Defendant has alleged that his postconviction counsel told him that, if he breached the Agreement by seeking postconviction relief in this case, he would risk receiving the death penalty in the King case. However, according to the facts that defendant has pleaded, which we accept as true at this stage (see People v. LaPointe, 365 Ill. App. 3d 914, 923 (2006), aff'd, 227 Ill. 2d 39 (2007)),

counsel never told defendant that, if he succeeded in challenging his conviction in this case, he could not be sentenced to death in the King case, because the sole basis for the death sentence there would have been destroyed. And, as we have held, a challenge to his conviction in this case would have succeeded, because Childress would have dictated that result. Therefore, at this stage in the proceedings, we must conclude that defendant's counsel erred in failing to realize that Childress would necessitate reversing both defendant's conviction in this case and his death sentence in the King case. Counsel completely failed to understand the consequences of pursuing the initial postconviction petition in this case, and, as a result, his advice to defendant was patently unsound. And, based on this unsound advice, defendant mistakenly believed that he would risk dire consequences by seeking postconviction relief in this case--when, in reality, he would risk nothing at all.

That defendant decided to forgo his initial postconviction petition in this case, in return for no benefit, brings us to the second reason why, on the present record, the Agreement is invalid. Courts have recognized that, like plea agreements in general, a plea agreement containing an appeal waiver is voidable for lack of consideration. United States v. Novosel, 481 F.3d 1288, 1291 (10th Cir. 2007); United States v. Brunetti, 376 F.3d 93, 95 (2d Cir. 2004). Here, as the preceding discussion implies, the consideration that defendant received under the Agreement was illusory. In return for accepting a conviction that had no legal basis, defendant obtained the "benefit" of avoiding a death sentence that rested solely on the unsupportable conviction. He could have obtained this benefit without entering into the Agreement; all he had to do was seek relief in this case. By entering into the Agreement, defendant surrendered something for nothing.

As we hold that the Agreement does not foreclose defendant from filing his proposed petition, and thereby raising an actual-innocence claim, we need not decide whether defendant also satisfied

section 122--1(f)'s cause-and-prejudice test. However, we agree with defendant that his postconviction counsel's alleged deficient performance provided the needed cause and that the valid claim of actual innocence provided the required showing of prejudice. Thus, in addition to raising an actual-innocence claim that avoids the need to satisfy the statutory test, defendant has also satisfied that test.

The trial court erred in refusing to allow defendant to file his second postconviction petition. We reverse the judgment, grant defendant's request (see 155 Ill. 2d R. 366(a)(5)), and remand the cause for the consideration of defendant's petition, in accordance with the Act and this opinion.

The judgment of the circuit court of Winnebago County is reversed, and the cause is remanded with directions.

Reversed and remanded with directions.

O'MALLEY and JORGENSEN, JJ., concur.